Harold M. Siegel, Appellant, *v.* City of New York, Respondent.

First Department, January 8, 1974

*Max Lichtenberg* (*John Jay* with him on the brief), for appellant.

*Stanley Buchsbaum* of counsel (*Irving Cohen* with him on the brief; *Norman Redlich, Corporation Counsel*), for respondent.

Murphy, J. In this action for false arrest and false imprisonment in which the jury returned a verdict for the defendant, plaintiff claims he was forcibly taken to Bellevue Hospital in the early hours of the morning of December 22, 1966 by several police officers who gained access to his apartment only after threatening to break the door down. Respondent, on the other

hand, claims the police officers were merely acting on certain information disclosed to them by plaintiff's sister and on a letter purportedly written by a psychiatrist who was of the opinion that plaintiff required hospitalization for psychiatric evaluation; and that appellant voluntarily accompanied them to the hospital. Since there was no evidence adduced indicating the need for immediate and precipitate action to prevent imminent harm, plaintiff's involuntary detention, if such was the case, could only be justified under article 5 of the Mental Hygiene Law. (*Warner* v. *State of New York*, 297 N. Y. 395.)

Section 81 of said law, as it existed on the above-mentioned date and insofar as here pertinent, authorized the director of Bellevue Hospital to take appropriate proceedings to determine the mental condition of any person whose sister reported him to such director as being apparently mentally ill. The director, when so informed, had the duty of then causing such person to be examined. The section then provided that: " Such examination may be made at the place where the allegedly mentally ill person resides or is to be found or the director may cause such person to be removed to a hospital for such examination and possible admission to a hospital ". The role of the director in the statutory process was of obvious concern to the jurors since they specifically asked: " Is it permissible for the police to take the man to hospital [*sic*] or does the section require that such a procedure be initiated only by or through the director? " The court responded that " it is permissible for the police to take the man to the hospital and the procedure does not have to be initiated by or through the director of the regional medical center." This response, to which an exception was taken, was clearly erroneous since, under the circumstances here presented, the director must initiate the procedure. The error was so prejudicial as to necessitate a new trial.

Since another trial is required, we also deem it necessary to comment on one other aspect of the case. Some seven hours after appellant was taken to Bellevue a habeas corpus proceeding was instituted, plaintiff was released in the custody of his father and the writ was ultimately sustained. While we all agree that, under the particular circumstances of this case, the doctrine of *res judicata* should not be applied with regard to the judgment sustaining the writ, the court is divided as to whether evidence of plaintiff's sanity, and particularly the testimony of the Bellevue physician who examined plaintiff on arrival, should be excluded on the retrial. The majority believes that it should.

In our view, the crucial questions remaining in this case are whether, on December 22, 1966, plaintiff voluntarily accompanied the police officers to the psychiatric ward of Bellevue Hospital and the quantum of damages to be assessed if liability is determined. Since there was no testimony introduced revealing the need for summary arrest and detention, in the factual situation presented here plaintiff's mental condition and the officers' good faith are completely irrelevant on such issues; and we find nothing in *Warner* v. *State of New York* (297 N. Y. 395, *supra*) mandating a different conclusion.

In *Warner*, plaintiff was detained against his will in a State hospital for some two weeks on a defective certificate before being lawfully committed. He was later found to be sane and sued for false imprisonment for the entire detention period. The Court of Appeals held that only the period of restraint by the hospital officials subsequent to court-sanctioned confinement was valid, stating, in language applicable to this case: "The common law recognized the power to restrain, summarily and without court process, an insane person who was dangerous at the moment. The power was to be exercised, however, only when ' necessary to prevent the party from doing some immediate injury either to himself or others ' * * * and ' only when the urgency of the case demands immediate intervention ' * * * On the other hand, insane persons who were not dangerous were ' not liable to be thus arrested or restrained.' * * * And upon one who did the restraining rested the burden of showing, in order to justify it, the urgency and necessity for the immediate restraint. * * *

" The State has enacted legislation dealing with the admission procedures to be followed in committing and confining the mentally ill (Mental Hygiene Law, art. 5), but that did not affect the existence of the common-law privilege of summary arrest and detention. * * * As before, only where immediate and precipitate action is demanded to prevent present and imminent harm, may the power be exercised. In lesser emergencies, the statute points the swift and expeditious admission procedures to which resort must be had. It is by one of those methods that any party — State or individual — must move where something less than present and imminent danger threatens." (*Warner* v. *State of New York*, 297 N. Y. 395, 401–402, *supra*.)

The rationale for such salutary rule was also clearly stated in *Warner* (p. 404): " Where personal freedom is at stake, insistence upon strict and literal compliance with statutory

274

provisions is not only reasonable but essential. The State has a legitimate and vital interest in protecting its citizens from harm at the hands of potentially dangerous mental cases, but that is not the only interest to be served. The liberty of an individual, not yet adjudged insane, is too precious to allow it to be invaded in any fashion, by any procedure, other than that explicitly prescribed by law.''

While it is true that the Court of Appeals in *Warner* held that the testimony of the hospital doctor who examined plaintiff on his arrival might have some bearing on the damages to be awarded, it was not to be admitted for the purpose of determining the good faith of defendant's employees. Even if we accept the Bellevue doctor's diagnosis of defendant's condition as '' schizophrenic reaction, schizophrenic type '', the police officers could not have utilized their summary common-law power without some overt action by plaintiff indicating the existence of an emergency situation. This is made clear not only by the court's statement in *Warner* (p. 404) that such evidence '' could not affect the result '' of that action, but also by reference to the cases cited as authority for its admission. In each such case the question discussed is whether, under the facts there presented, any distinction should be made between the damages awarded to a sane as distinguished from an insane person. Thus, in *Tweed* v. *Western Union Tel. Co.* (107 Tex. 247) the court held that mental suffering from personal injuries will be presumed in the case of an insane person and the existence of such abnormal condition as would rebut such presumption would be a defense required to be proven as a fact. In *Scolavino* v. *State of New York* (297 N. Y. 460), the court affirmed the increase of an award to an inmate of a State hospital who had been rendered permanently blind by another inmate. The Appellate Division (*Scolavino* v. *State of New York*, 271 App. Div. 618), though recognizing the difficulty in determining the victim's monetary loss, refused to sustain an award which would have been entirely inadequate to compensate a mentally alert person of equivalent years. Similarly, in *Gallachicco* v. *State of New York* (43 N. Y. S. 2d 439), the Court of Claims rejected the Attorney-General's contention that only nominal damages may be awarded to an infant mental defective injured as a result of the negligence of the State's employees. In the final case cited on this point by Judge (now Chief Judge) FULD in *Warner* (*Grasso* v. *State of New York*, 289 N. Y. 552), the Court of Appeals affirmed the denial of damages for wrongful death where it appeared that the deceased

inmate of an institution for defective delinquents was incurable and would never have been able to contribute anything of a pecuniary nature to the claimant.

From the foregoing, it appears that the introduction of testimony regarding a claimant's sanity is solely for the limited purpose of considering it, as a possible factor, in the uniformly recognized difficult task of accurately measuring damages, particularly for items such as humiliation and mental anguish. In the instant case, upon the record before us, plaintiff was never lawfully confined or committed and his psychiatric evaluation at Bellevue, prior to the issuance of the writ, was not completed. Respondent's sole affirmative defense asserts that the officers acted in good faith, without malice and with reasonable and probable cause. No allegation or suggestion was made that plaintiff was incapable of experiencing mental suffering or that a different rule of damages should be applied here because of the existence of any claimed abnormality. Accordingly, the introduction of testimony as to plaintiff's mental condition on arrival at Bellevue on December 22, 1966, at a retrial, would be completely irrelevant with regard to the propriety of the earlier conduct of the police officers and the amount of recoverable damages and since such testimony would only serve to unnecessarily prolong the trial and prejudicially confuse the jury in its attempt to resolve these limited remaining issues, it should be excluded.

The judgment of Supreme Court, New York County (NATHANIEL T. HELMAN, J.), entered June 12, 1972, in favor of defendant, should be reversed, on the law, without costs or disbursements, and a new trial directed.

KUPFERMAN, J. (concurring). We concur only in that portion of the opinion that directs a new trial on the basis that the charge was erroneous. We disagree with the suggestion that testimony regarding sanity should be excluded on the retrial.

In this type of false arrest and false imprisonment action, the good faith of the police officer and the actual condition of the plaintiff become extremely important on the question of damages. (*Warner* v. *State of New York,* 297 N. Y. 395, 404–405.)

LANE and TILZER, JJ., concur with MURPHY, J.; KUPFERMAN J., concurs, in part, in an opinion, in which McGIVERN, P. J., concurs.

Judgment, Supreme Court, New York County, entered on June 12, 1972, reversed, on the law, and vacated, without costs and without disbursements and a new trial directed.